## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT D. HAMMER,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

CIVIL ACTION NO. 3:21-cv-00616

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Robert D. Hammer seeks judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

### I. BACKGROUND

On January 17, 2019, Hammer protectively filed claims for disability insurance benefits and supplemental security income, both asserting a disability onset date of January 14, 2014. Both claims were

initially denied by state agency reviewers on April 16, 2019. The plaintiff then requested an administrative hearing.

A hearing was held on February 25, 2020, before an administrative law judge, Daniel Balutis (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Gerald W. Keating. The plaintiff was represented by counsel at the hearing.

On March 31, 2020, the ALJ denied Hammer's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Hammer was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Hammer had not engaged in substantial gainful activity since May 1, 2017. At step two, the ALJ found that Hammer had the severe impairments of: cervical degenerative disc disease, rheumatoid arthritis/inflammatory polyarthritis, fibromyalgia, Legg-Calvé-Perthes disease (LCPD), osteoarthritis of the left third toe and right hip joint.

At step three, the ALJ found that Hammer did not have an impairment or combination of impairments that meets or medically

equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In doing so, the ALJ considered Hammer's limitations in four broad functional areas as a result of a medically determinable but non-severe mental impairment, finding no more than mild limitations in all four functional areas—(1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404 subpt. P app. 1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Hammer's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Hammer had the RFC to perform "light work" as defined in 20 C.F.R.

§§ 404.1567(b) and 416.967(b),[1] with the following limitations:

> [T]he claimant has the residual functional capacity to handle items frequently with the left hand. He can handle items frequently with the right hand. He has fingering limitations frequently with the left hand. He has fingering limitations frequently with the right hand. The claimant has feel limitations frequently on the left. He has feel limitations frequently on the right. The claimant can climb ramps and stairs frequently, but he can never climb ladders, ropes, or scaffolds. He can balance occasionally; stoop frequently; kneel frequently; crouch frequently, and crawl frequently. The claimant can work at unprotected heights frequently. He can work around moving mechanical parts frequently. He can work in dust, odors, fumes, and pulmonary irritants frequently. He can work in extreme cold occasionally. He can have frequent exposure to vibrations.

(Tr. 16.)

In making these factual findings regarding Hammer's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25,

---

[1] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Hammer was unable to perform his past relevant work as actually and generally performed.

At step five, the ALJ concluded that Hammer was capable of performing other work that exists in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Hammer was capable of performing the requirements of representative occupations such as mail sorter, DOT # 209.687-026, and general cashier/cashier II, DOT # 211.462-010. Based on this finding, the ALJ concluded that Hammer was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on February 1, 2021, making the ALJ's March 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on April 3,

2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Hammer asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate prior administrative findings, including the medical opinion of a non-examining state agency medical consultant, Kevin Hollick, D.O.; (2) the ALJ failed to properly evaluate the opinion of a consultative examining physician, Ziba Monfared, M.D.; and (3) the ALJ failed to properly

consider Hammer's subjective allegations regarding his symptoms.[2]

## A. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*,

---

[2] The plaintiff's brief articulated a single, extremely broad claim of error—that the ALJ's analysis of the opinion and other evidence and the resultant RFC are poorly explained and unsupported by substantial evidence. A close reading of the brief, however, reveals that this generalized grievance rests on the more specific errors identified in the text above, concerning the ALJ's evaluation of medical opinions and of the plaintiff's subjective symptoms.

399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & n.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in January 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger*

*v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at \*7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at \*7–\*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at \*7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520, 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also*

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), *and id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), *and id.* §§ 404.1527(c)(4), 416.927(c)(4) (consistency).[3] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. §§ 404.1520(c)(b)(2), 416.920(c)(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well

---

[3] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520(c)(c)(2), 416.920c(c)(2).

supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. *Prior Administrative Findings in this Case*

The ALJ considered the prior administrative findings in this case, which included the medical opinions of state agency medical and psychological consultants.

The prior administrative findings included the opinion of a state agency medical consultant, Kevin Hollick, D.O., who had found the claimant capable of performing light work with some postural, manipulative, and environmental limitations.[4] Based on his review of Hammer's medical records, Dr. Hollick found that Hammer was capable

---

[4] We note that the ALJ's written decision refers to multiple opinions by medical and psychological consultants, describing them in the plural. The record includes two identical copies of the same medical opinion, recorded by the same medical consultant on the same date, one addressing the plaintiff's disability insurance benefits application and the other addressing his supplemental security income application. It also includes two identical copies of the same psychological opinion, recorded by the same psychological consultant on the same date, each addressing one application or the other. We have retained the ALJ's plural descriptors.

of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Hollick found that Hammer was capable of sitting, standing, or walking up to six hours per 8-hour workday. Dr. Hollick additionally found that Hammer was capable of frequent stooping, kneeling, crouching, crawling, or climbing of ramps or stairs, and occasional balancing, but no climbing of ladders, ropes, or scaffolds. Dr. Hollick found that Hammer was capable of no more than frequent fingering, grasping, and handling with his right hand and arm, but no limitations with respect to his left hand and arm. Dr. Hollick found that Hammer was subject to certain environmental limitations, including the avoidance of moderate exposure to extreme cold or concentrated exposure to vibration, hazards, and fumes, odors, gases, poor ventilation. In evaluating the opinion of Dr. Hollick, the ALJ found the state agency medical consultant's opinion persuasive with respect to exertional and postural limitations, and with respect to handling and fingering limitations, noting that: "The[se] assessments are supported by the explanations provided by the consultants. The consultants reviewed the medical evidence to reach their conclusions. The[se] limitations are consistent with radiographs, physical findings, and the level of

treatment rendered." (Tr. 19.) But the ALJ found the opinion "unconvincing" with respect to the environmental and grasping limitations "because the[se] limitations are not supported by the objective evidence. There is no evidence of significant cold, fume, or vibration intolerances. He generally did not have focal/motor sensory deficits. Treatment records do [n]ot document decreased grip strength . . . ." (*Id.*)

The prior administrative findings included the opinion of a state agency psychological consultant, Thomas Fink, Ph.D., who found that, although Hammer had a medically determinable impairment of depressive, bipolar, or related disorder, Hammer had no more than mild limitations in any of the four areas of mental functioning.[5] In evaluating the opinion of Dr. Fink, the ALJ found that:

> These opinions are persuasive; they are supported by the explanations provided by the consultants. The consultants reviewed the medical evidence and psychological evaluations to reach their conclusions. They noted that the claimant was prescribed antidepressant medication by his primary care physician, which supports the existence of some limitations, albeit mild. Further limitations would not be consistent with the claimant's lack of mental health

---

[5] *See supra* note 4.

treatment history and mental status findings.
(*Id.*) In comparing the opinion of this state agency psychological consultant with an opinion by a consultative examining psychologist, the ALJ also noted that: "[T]he State agency consultants have a greater familiarity with the other evidence in the claim, and an understanding of SSA's disability programs policies and evidentiary requirements." (*Id.*)

The plaintiff only addresses these particular medical opinions in passing. He objects only to the ALJ's adoption of *bilateral* manipulative limitations based on Dr. Hollick's opinion, which found only *right-side* limitations in fingering, handling, and grasping. But any such error is harmless because the ALJ did not reject Dr. Hollick's opinion except to adopt an RFC with more restrictive manipulative limitations, which is more favorable to the plaintiff. *See Smith v. Berryhill*, Civil Action No. 16-1280, 2017 WL 3980946, at *3 (W.D. Pa. Sept. 11, 2017).

The plaintiff has not otherwise challenged the ALJ's evaluation of these prior administrative findings, including the opinion of state agency psychological consultant, Dr. Fink.

Accordingly, we find the ALJ's evaluation of the prior

administrative findings, including the medical opinions of state agency medical and psychological consultants, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. *Opinion of Consultative Examining Psychologist*

On April 9, 2019, Hammer was seen and examined by a consultative examining psychologist, Gregory Coleman, Psy.D. On examination, Dr. Coleman observed depressed affect and reportedly dysthymic mood, but all other observations were normal. Dr. Coleman recorded a mental health diagnosis of unspecified depressive disorder secondary to pain, with a good prognosis given compliance with mental health treatment and finding suitable full time employment. Dr. Coleman also completed an agency form report on Hammer's ability to do work-related activities. He opined that Hammer had moderate limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting, but no other limitations in any other work-related areas of mental functioning. In evaluating the opinion of Dr. Coleman, the ALJ found that his opinion was inconsistent with and "less persuasive" than that of Dr. Fink,

primarily based on the state agency medical consultant's familiarity with other evidence in the claim and with the agency's disability program policies and evidentiary requirements. (Tr. 19.)

The plaintiff has not challenged the ALJ's evaluation of this medical opinion.

### 3. Opinion of Consultative Examining Physician

On April 9, 2019, Hammer was seen and examined by a consultative examining physician, Ziba Monfared, M.D. On examination, Dr. Monfared observed that Hammer did not seem to be in respiratory distress, but he reported that he was in "a lot of pain pretty much all over the joints with a limited exam." Dr. Monfared observed that Hammer's gait and stance were normal, but he was not able to walk on his heels and toes due to pain, and he was limited to 10% squat due to pain. She observed that Hammer did not use a cane or other assistive device to ambulate, he needed no help changing for the exam, and he was able to rise from a chair without difficulty, but she also observed that he needed some assistance getting on and off the exam table, and he was unable to sit up from a supine position without assistance due to severe back pain. Dr. Monfared found no scoliosis, kyphosis, or

abnormality in the thoracic spine. She noted that the straight leg test was positive bilaterally at 20 degrees above table in supine position,[6] but negative bilaterally in seated position. Dr. Monfared observed no evidence of joint deformity, but effusion of the digits of both hands was appreciated. She noted that Hammer had difficulty with range of motion of the hands due to this swelling, and that finger joints were tender in DIP and PIP. But she observed no redness or heat, and she observed that all other joints were stable. Dr. Monfared observed that Hammer exhibited no reflex or sensory deficits and 4/5 strength in all extremities bilaterally. She observed plus-one pitting ankle edema bilaterally, but no muscle atrophy, no varicosities or trophic changes, physiologic and equal pulses, and no cyanosis or clubbing. Dr. Monfared observed deficiencies in hand and finger dexterity, noting difficulty with range of motion, 3/5 strength bilaterally, and an inability to zip, button, or tie. She recorded a diagnosis of rheumatoid arthritis affecting multiple

---

[6] We note that Dr. Monfared's report contained a scrivener's error in this particular observation, noting that the straight leg test was positive bilaterally at 20 degrees "above table confirmed in *seated* position." (Tr. 1180 (emphasis added).) But the next sentence also reported negative straight leg test bilaterally in seated position. (*Id.*) Based on the context, it is clear that the first sentence was intended to document a straight leg test administered in the *supine* position.

joints including bilateral hands with loss of dexterity, history of stage 4 melanoma (status post-surgical removal, currently in remission), history of pulmonary embolism, history of lumbar pain with radiculitis, and uncontrolled hypertension, with a poor prognosis.

Dr. Monfared also completed an agency form report on Hammer's ability to do work-related activities. She opined that Hammer was capable of lifting or carrying up to 20 pounds occasionally due to back pain and weakened bilateral grip. Dr. Monfared found that, due to his back pain, Hammer was capable of sitting up to 8 hours in an 8-hour workday, but he could stand or walk for only 1 hour in an 8-hour workday. She noted that Hammer did not require the use of a cane to ambulate. Dr. Monfared found that Hammer was capable of frequent feeling bilaterally, but only occasional reaching, handling, fingering, or pushing/pulling bilaterally, and he was limited to no more than occasional use of either foot to operate foot controls. Dr. Monfared opined that Hammer was limited to only occasional stooping, crawling, or climbing of stairs or ramps, and no balancing, kneeling, crouching, or climbing of ladders or scaffolds at all. Dr. Monfared found that Hammer was subject to certain environmental limitations, including no exposure

to unprotected heights or moving mechanical parts, and no more than

occasional exposure to operating a motor vehicle, humidity and wetness,

extreme cold, or vibrations due to his history of pulmonary embolism and

due to bilateral weakness in his hands due to rheumatoid arthritis. She

opined that Hammer was unable to walk a block at a reasonable pace on

rough or uneven surfaces, or to sort, handle, or use papers or files.

In evaluating the opinion of Dr. Monfared, the ALJ found that:

> The opinion is not persuasive because it is not
> supported by her findings. Her opinion was based
> mostly on the subjective complaints of the claimant
> and his pain behavior rather than the objective
> findings on the examination or the medical evidence.
> Additionally, her opinion was based on a one-time
> assessment, not a longitudinal understanding of the
> claimant's impairments. Her findings are not
> consistent with the substantial evidence of record
> since the amended alleged onset date of disability. The
> proposed stand and walk restrictions are
> underestimates of the claimant's abilities. He should
> be able to perform frequent fingering and handling,
> and unlimited grasping with the right upper
> extremity. It is noted that a treating physician, who
> has a better understanding of the claimant's
> impairments, declined to provide an opinion.

(Tr. 19–20 (citations omitted).)

Here, the ALJ properly considered the medical evidence of

record and the relevant factors of supportability and consistency.

He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion as well. The plaintiff quibbles with the ultimate outcome of the ALJ's evaluation of the opinion, arguing that various factors support a contrary conclusion, but it is clear that the ALJ's findings with respect to Dr. Monfared's opinion are supported by substantial evidence.

Accordingly, we find the ALJ's evaluation of the opinion of examining physician Dr. Monfared is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### B. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of the plaintiff's symptoms, including statements or testimony by Hammer himself. *See generally* 20 C.F.R. § 404.1502(i) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 404.1529(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199

(3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. § 404.1529(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record,

including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 17–20.) This included the plaintiff's statements regarding the limiting effects of his symptoms. Based on his consideration of the whole record, the ALJ properly concluded that, while Hammer's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 17.)

The plaintiff argues that the ALJ erred in considering his activities of daily living when evaluating his symptoms. It is indeed true that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*,

637 F.2d 968, 971–72 (3d Cir. 1981). But, nevertheless, an ALJ may properly consider a plaintiff's activities of daily living when evaluating his subjective complaints of pain or other symptoms. *See Turby v. Barnhart*, 54 Fed. App'x 118, 121 n.1 (3d Cir. 2002) ("Although certainly disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity, it is nonetheless appropriate for the ALJ to consider the number and types of activities in which the claimant engages.") (citations, brackets, and internal quotation marks omitted); *Durden v. Colvin*, 191 F. Supp. 3d 429, 442 (M.D. Pa. 2016) ("[I]t is permissible for such activities to be used to assess a claimant's [subjective allegations] in light of any true contradiction between his or her alleged severity of symptoms and the claimant's activities."). Indeed, the applicable regulations *mandate* such consideration by the ALJ. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Citing Social Security Ruling 16-3p, the plaintiff also argues that the ALJ failed to properly question him regarding his non-compliance with prescribed medical treatment. But the ruling's language is permissive in that it states that the ALJ "*may* need to contact the

individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *9 (revised Oct. 25, 2017) (emphasis added.) "The ALJ is not obligated to question a claimant; rather, [the ruling] places such a judgment within the ALJ's discretion." *Kreitz v. Berryhill*, Civil No. 3:16-CV-02406, 2018 WL 410861, at *5 (M.D. Pa. Jun 6, 2018).

Although Hammer quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the claimant's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the claimant's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Hammer was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: October 6, 2022                    **_s/Joseph F. Saporito, Jr._**
                                          JOSEPH F. SAPORITO, JR.
                                          United States Magistrate Judge